UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

BST CORPORATION,

                                    Plaintiff,

                    -v.-

M/V ELLIOTT BAY (NOW M/V DALLY),
PACIFIC BASIN HANDYSIZE LIMITED, and
PACIFIC BASIN HANDYSIZE (HK) LTD.,

                                    Defendants.

------------------------------------------------------------

19 Civ. 2063 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff BST Corporation ("BST") brought this admiralty action for damage to its cargo (the "Cargo") against the ship that carried the Cargo — then known as the M/V Elliott Bay and now known as the M/V Dally — as well as Pacific Basin Handysize Limited and Pacific Basin Handysize (HK) Ltd. (collectively, "PBHS"), the entities that own and operate the M/V Dally.  PBHS now moves to dismiss the suit for lack of personal jurisdiction, and BST opposes that motion, citing a forum-selection provision in which PBHS ostensibly consented to jurisdiction in the Southern District of New York.  For the reasons explained below, which differ somewhat from the arguments advanced by the parties, the Court finds the forum-selection provision to be enforceable and therefore denies PBHS's motion.

**BACKGROUND**[1]

**A.     The Relevant Agreements**

On January 10, 2018, PBHS,[2] as "Owners" of the M/V Dally, and Tung Ho Steel Enterprise Corporation of Taiwan ("Tung Ho"), as "Charterers," entered into a Charter Party Fixture Note (the "Charter Party"),[3] for the shipment of the Cargo from Taiching, Taiwan, to North America.  (Wanchoo Decl., Ex. 1).  The Charter Party contains a provision, entitled the "Clause Paramount," which states, *inter alia*, that:

> Any arbitration clause or non U.S./N.Y. forum selection clause, in this contract, and in any Bills of Lading hereunder, shall not apply to claims for cargo loss or damage but such claims shall be brought in the United States District Court for the Southern District of New York, pursuant to the law and practice of such district, to which jurisdiction [Pacific Basin Handysize Limited] hereby consent.

---

[1]   This Opinion draws on facts alleged in the Complaint ("Compl." (Dkt. #1)); the declaration of Vivien L. Shum in support of Defendants' motion ("Shum Decl." (Dkt. #15)); the declaration of Rahul Wanchoo and attached exhibits in support of Defendants' motion ("Wanchoo Decl." (Dkt. #16)); the declaration of Carina Nemier and attached exhibits in opposition to Defendants' motion ("Nemier Decl." (Dkt. #18)); the declaration of Tommy Cheng and attached exhibits in opposition to Defendants' motion ("Cheng Decl." (Dkt. #19)); and the declaration of Karl Wang in support of Defendants' motion ("Wang Decl." (Dkt. #21)).

For ease of reference, the Court refers to the parties' briefing as follows: Defendants' opening brief as "Def. Br." (Dkt. #14); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #17); and Defendants' reply brief as "Def. Reply" (Dkt. #20).

[2]   PBHS is a wholly-owned subsidiary of Pacific Basin Shipping Ltd. ("PBSL"), a Bermuda company that is headquartered in Hong Kong and listed on the Hong Kong Stock Exchange.  (Shum Decl. ¶ 3).  PBHS has no presence in New York, or anywhere in the United States.  (*Id.* at ¶ 8).  PBHS does not solicit any business in New York; it does not own or lease any real, tangible, intangible, or personal property in New York; it has no employees located in New York; and it does not maintain any bank, brokerage, or investment accounts in New York.  (*Id.* at ¶¶ 8, 9).

[3]   As discussed further *infra* at 10, a charter party is a contract by which the owner of a ship lets it to others for use in transporting cargo.  The shipowner continues to control the navigation and management of the vessel, but its carrying capacity is engaged by the charterer.

(Wanchoo Decl., Ex. 1 at 2).

The Cargo, which consisted of 12,538.832 metric tons of steel beams, was transported by PBHS from Taiching, Taiwan, to Los Angeles, California, pursuant to the Charter Party.  (Nemier Decl. 1).  Seventeen separate bills of lading (the "Bills of Lading"), all dated February 16, 2018, reflect the transfer of the Cargo from Tung Ho to BST.  (Compl., Schedule A; Wanchoo Decl., Ex. 2; Nemier Decl., Ex. A).  The Bills of Lading list BST as "Consignee," Tung Ho as "Shipper," and Pacific Basin Handysize (HK) Ltd. as "Carrier."  (Wanchoo Decl., Ex. 2).  Each of the Bills of Lading states that:

> All disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.

(*Id.*).

BST claims that, due to the fault and neglect of PBHS, the Cargo was damaged.  (Compl. ¶ 4).  After realizing that the Cargo was damaged, BST obtained an assignment (the "Assignment") of the Charter Party from Tung Ho on March 1, 2019.  (Nemier Decl., Ex. C).  The Assignment states:

> In consideration of the purchase price paid hereunder for a cargo of steel beams shipping from Taichung to Stockton and Los Angeles aboard M/V Elliott Bay on or about February 16, 2018, and other good and valuable consideration, Tung Ho Steel Enterprise Corporation hereby assigns all right, title and interest in the Fixture Contract and charter party between Pacific Basin Handysize Limited for the M/V Elliott Bay dated January 10, 2018, as attached hereto, to BST Corporation d/b/a Best-Steel Trade Corporation and Tung Ho Steel Enterprise Corporation hereby ratifies any litigation commenced or to be commenced by BST Corporation in the United States District Court,

3

> Southern District of New York as against M/V Elliott Bay, her owners, and Pacific Basin Handysize Limited, and further stipulates and declares that its fixture note and charter for the aforesaid M/V Elliott Bay was executed by it and on behalf of BST Corporation d/b/a Best-Steel Trade Corporation as the beneficiary thereof and assigns to the aforesaid BST Corporation all right, title and interest in the aforesaid booking note as charterer under the aforesaid booking note, *ab initio*, and transfers all its rights, privileges and title to sue under the said fixture note to BST Corporation, *nunc pro tunc.*

(*Id.*).

## B.   The Instant Litigation

After obtaining the Assignment, BST filed suit against PBHS and the M/V Dally in this Court on March 6, 2019. (Dkt. #1). The Complaint recites that BST's claim arises under the "Court's Admiralty and Maritime jurisdiction with respect to the carriage of goods by water, and under the Federal question jurisdiction and the Court's diversity and pendent jurisdiction with respect to the remaining aspects of the claim." (Compl. ¶ 1). The Complaint also alleges that the M/V Dally is "now or will be during the pendency of this action within the jurisdiction of this Honorable Court." (*Id.* at ¶ 5).

The case was originally assigned to United States District Judge Deborah A. Batts. On May 31, 2019, PBHS filed a motion to dismiss the case for lack of personal jurisdiction. (Dkt. #14, 15, 16). Broadly speaking, PBHS argues that the Complaint does not make a *prima facie* showing of jurisdiction. (Def. Br. 6). It explains that "there are no allegations in the Complaint that would give rise to personal jurisdiction over the Defendants." (*Id.* at 8).

4

On June 13, 2019, BST filed a brief and two declarations in opposition to this motion. (Dkt. #17, 18, 19). BST relies on the forum-selection clause of the Charter Party and the Assignment as bases for this Court to assert personal jurisdiction over PBHS. (*See generally* Pl. Opp.). Of note, BST claims that it can rely on the forum-selection clause of the Charter Party, even though it was not a signatory to that agreement, because BST arranged for the transport of the Cargo with PBHS. (*See id.* at 1-2). BST further explains that its personnel had a previous course of dealing with PBHS, and that the shipments at issue were booked in accordance with that course of dealing. (*See id.* at 2; *see generally* Nemier Decl.). From this, BST reasons that PBHS was aware that the Charter Party entered into by Tung Ho was really for the benefit of BST. (*See* Nemier Decl. 2). And while not arguing the point explicitly, BST implies that it can enforce the Charter Party as either a party to the agreement, a third-party beneficiary of the agreement, or an agent of Tung Ho.

On June 21, 2019, PBHS filed a reply brief and affidavit in support of its motion. (Dkt. #20, 21). PBHS contests the factual assertions underlying BST's argument. (*See generally* Def. Reply). It disclaims a prior course of dealing or contractual relationship between BST and PBHS. (*See id.* at 2). PBHS explains that it entered into the Charter Party directly with Tung Ho, which chartered the M/V Dally to fulfill the terms of its contract with BST. (*See id.*). Accordingly, PBHS contends that the forum-selection clause present in the Charter Party is applicable only as between it and Tung Ho, and that in this suit brought by BST, the relevant forum-selection provision is the one

5

contained in the Bills of Lading.  (*See id.*).  Relatedly, PBHS claims that the Assignment cannot "undo" the terms of the Bills of Lading, because the Assignment occurred after title to the Cargo had passed to BST.  (*See id.* at 4, 6).

On February 20, 2020, this case was transferred to the undersigned, with the motion to dismiss for lack of personal jurisdiction fully briefed.

## DISCUSSION

**A.    The Court Denies PBHS's Motion to Dismiss for Lack of Personal Jurisdiction**

 **1.    Applicable Law**

  **a.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)**

When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).  In ruling on a Rule 12(b)(2) motion, the court may also consider materials outside the pleadings, including affidavits and other written materials. *See Brady* v. *Anker Innovations Ltd.*, No. 18 Civ. 11396

(NSR), 2020 WL 158760, at *2 (S.D.N.Y. Jan. 13, 2020) (citing *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Bensusan Rest. Corp.* v. *King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997)).

All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks*, 714 F.3d at 673; *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding motions to dismiss for lack of personal jurisdiction typically engage in a two-part analysis. The Court must find both that: (i) state law provides "a statutory basis for exercising personal jurisdiction," *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013); and (ii) the exercise of personal jurisdiction comports with due process, *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014).

### b.    Operation of Forum-Selection Clauses

In addition to the customary bases for asserting personal jurisdiction, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd.* v. *Szukhent*, 375 U.S. 311, 315-16 (1964) ("And it is settled … that parties to a contract may agree in advance to submit to the jurisdiction of a given court[.]")). "Where an agreement

contains a valid and enforceable forum selection clause, ... it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Export-Import Bank of U.S.* v. *Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) (citing *Koninklijke Philips Elecs.* v. *Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005)).  This is so because "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." *Farrell Lines Inc.* v. *Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997); *see generally MTS Logistics, Inc.* v. *Innovative Commodities Grp., LLC*, No. 19 Civ. 4216 (PAE), 2020 WL 917321, at *4 (S.D.N.Y. Feb. 26, 2020) (collecting cases).

A forum-selection clause is *prima facie* valid unless a party demonstrates that (i) the contract was induced by misrepresentation or overwhelming bargaining power; (ii) enforcement would be unreasonable; or (iii) enforcement would contravene a strong public policy of the United States.  *See M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *TradeComet.com LLC* v. *Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).  Courts must give substantial deference to the forum selected by the parties, particularly where this choice was made in an arms'-length negotiation by experienced and sophisticated businesspeople. *New Moon Shipping Co., Ltd.* v. *MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).  The application of a forum-selection clause is a question of contract interpretation.  *See Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007).

### 2.      Analysis

BST relies on *Asoma Corp.* v. *SK Shipping Co., Ltd.*, 467 F.3d 817 (2d Cir. 2006), for the proposition that it can rely on the Charter Party's forum-selection provision even though it is not a signatory to that agreement.  (*See* Pl. Opp. 3-4).  In *Asoma*, MUR London, an affiliate of Asoma, entered into a voyage charter party with SK Shipping.  *Id.* at 820.  The charter party provided for the carriage of steel by SK Shipping from Taiwan to three separate ports in the United States, on a ship to be nominated by SK Shipping.  *Id.*  The charter party identified SK Shipping as the "time chartered owner," and identified the charterer as MUR London "or nominee."  *Id.*  The charter party contained a Southern District of New York forum-selection clause.  *Id.*

In January 2000, Asoma purchased steel coils that were shipped on the M/V Faros, pursuant to the charter party.  467 F.3d at 820.  The bills of lading provided to Asoma recited "FREIGHT PAYABLE AS PER CHARTER PARTY," but the bills of lading contained a Seoul, South Korea, forum-selection clause.  *Id.*  In March 2000, the steel coils were delivered to the United States in damaged condition.  *Id.*  On February 21, 2001, MUR London executed an Assignment, Ratification, and Nomination, which nominated Asoma as the charterer under the charter party, assigned all MUR London's rights in the charter party to Asoma, and ratified Asoma's upcoming litigation against SK Shipping.  *Id.*  Asoma then brought suit against SK Shipping in the Southern District of New York.  *Id.*

9

The district court dismissed the complaint, citing the South Korean forum-selection clause in the bills of lading provided to Asoma. 467 F.3d at 821. The Second Circuit reversed. *See id.* The Court framed the issue on appeal as whether the governing contract was the charter party, which contained a New York forum-selection clause, or the bills of lading, which contained a South Korean forum-selection clause. *See id.* It concluded that the charter party was the governing contract, and, therefore, the district court should have enforced the New York forum-selection clause of the charter party. *Id.*

The Court began its analysis with an explanation of the relevant documents:

> A charter party is a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his. A bill of lading is a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above.

467 F.3d at 823 (internal citations and quotation marks omitted). It then proceeded to discuss the legal significance ascribed to each:

> The general rule that, "as between the parties to a charter party, a bill of lading is a mere receipt and not also part of the contract of carriage, has long been recognized to be a flexible one, *i.e.*, subject to contractual modification by the parties." But this does not mean that an agreement as to the terms of carriage, such as a charter party, can be *unilaterally* altered by the carrier's issuance of a bill of lading with terms more favorable to itself.

*Id.* at 823-24 (quoting *Nichimen Co.* v. *M.V. Farland*, 462 F.2d 319, 328 n.4 (2d Cir. 1972)).

Ultimately, the Court concluded that SK Shipping had unilaterally altered the terms of the charter party by including a South Korean forum-selection clause in the bills of lading:

> SK Shipping agreed to the terms of the charter party to which Asoma became a party — the charterer — when it was nominated by MUR London. Under the charter party, as charterer, Asoma brings suit for cargo damage. The charter party expressly provides that cargo damage claims "shall be brought in the United States District Court for the Southern District of New York." Asoma is entitled to rely on that term of its contract of charter with SK Shipping.

467 F.3d at 824. Importantly, the Court found that Asoma was itself a party to the charter party by virtue of MUR London's making Asoma its "nominee." *Id.* at 820 (finding that because Asoma was "MUR London's nominee and therefore a party to the contract of charter, [it] brought this suit in accordance with the stated terms of the contract of charter requiring that suits for cargo damage be litigated in the United States District Court for the Southern District of New York").

In *Asoma*, the Court recognized that, in a maritime transaction, the purchaser of the goods — and therefore the recipient of the bills of lading — is not always a party to the charter party:

> Notwithstanding the existence of a charter party, which serves as the contract of carriage as between the parties to it, the bill of lading may serve as the contract of carriage defining the rights and obligations as between the carrier and another person not entitled to rely on

11

> the charter party ....  Where the bill of lading has been
> transferred for value by the charterer to third persons
> who are strangers to the charter party, its terms become
> very important.  It then constitutes an undertaking on
> the part of the shipowners with the holders, which is
> independent of the charter party, except so far as that
> is expressly incorporated in it.

467 F.3d at 824 (alterations omitted).  The Court provided examples to explain

when non-parties to a charter party might nonetheless be bound by its terms,

and when they would not:

> [A]n owner of goods might charter a boat through a
> charter party with the boat owner, and would receive a
> bill of lading as a receipt when its goods are loaded on
> the boat.  The charter-owner of the goods might then
> sell the goods to a third party while they are in transit
> on the boat, transferring the bill of lading to the third
> party.  Because the third party who now owns the goods
> was not a party to the charter party, the bill of lading,
> and not the charter party, would become the contract of
> carriage of the goods between the third party and the
> boat owner.  *See, e.g., Son Shipping Co.* v. *De Fosse &
> Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952).

*Id.* at 824 n.4.[4]  That is precisely the situation before the Court:  Tung Ho

entered the Charter Party with PBHS on January 10, 2018, for the shipment of

goods.  Tung Ho then sold goods to BST, providing BST with Bills of Lading.

Despite BST's contention that it was involved in negotiating the Charter Party,

it has not adequately alleged that it is a party to the Charter Party.  In other

words, unlike in *Asoma*, where the text of the charter party made clear that

---

[4]      *See also* 467 F.3d at 825:

> To be sure, if the suit for cargo damage were brought against the
> carrier by an assignee of the bills of lading who was not a party or
> beneficiary to the contract of charter, the bills of lading would in
> all likelihood serve as pertinent contracts of carriage and their
> forum selection clause would no doubt govern.

Asoma could become a party to the agreement as MUR London's "nominee," nothing in the text of the Charter Party indicates that BST was a party to the Charter Party, a third-party beneficiary of the Charter Party, or an agent for Tung Ho.

Because BST was neither a signatory of nor a party to the Charter Party, the Bills of Lading, and not the Charter Party, are the relevant contracts of carriage between BST and PBHS.  *See* 467 F.3d at 824; *see also Man Ferrostaal, Inc.* v. *M/V Akili*, 704 F.3d 77, 84 (2d Cir. 2012) ("[W]hen the bill of lading is negotiated to a good faith third party, which did not occur here, the bill governs the third party's rights."); *Fortis Corp. Ins., S.A.* v. *Viken Ship Management A.S.*, 481 F. Supp. 2d 862, 867 (N.D. Ohio 2007) ("One exception to this general rule is when the bill of lading is negotiated to a third party ('consignee').  Since the consignee is not subject to the terms of the charter party, the bill of lading is transformed into the applicable contract of carriage."); *Kyoei Fire & Marine Ins. Co., Ltd.* v. *M/V Maritime Antalya*, No. 06 Civ. 2043 (LAP), 2006 WL 3378683, at *2 (S.D.N.Y. Nov. 20, 2006) ("If a bill of lading issued from a vessel traveling under private charter is negotiated to a third party (*e.g.*, as a document of title to a third-party consignee of the goods being shipped), then the bill of lading becomes a contract between the shipper and the third party."); *Ministry of Commerce, State Purchases Directorate of Athens, Greece* v. *Marine Tankers Corp.*, 194 F. Supp. 161, 162-63 (S.D.N.Y. 1960) ("Since the transferee of the negotiable bill is not a party to the charter, that original contractual document does not constitute the contract of carriage

13

upon which his rights are based."); *United States* v. *Wessel, Duval & Co.*, 115 F. Supp. 678, 682 (S.D.N.Y. 1953) ("Where the bill of lading has been transferred for value to third persons who are strangers to the charter party, its terms become very important.  It then constitutes an undertaking on the part of the shipowner with the holders, which is independent of the charter party, except so far as that is expressly incorporated in it.").  But that is not the end of the Court's analysis.

Having determined that the relevant contracts of carriage are the Bills of Lading, the Court proceeds to construe the forum-selection clause in those documents.  PBHS contends that if the Bills of Lading were found to be the contracts of carriage between the parties, then the forum for this suit must be the "flag-state of the ship." (*See* Def. Reply 6).  In point of fact, the "Jurisdiction" provision of the Bills of Lading is not so limited.  Indeed, it states that disputes arising in connection with the Bills of Lading shall be settled either in the flag-state of the ship "or otherwise in the place mutually agreed between the Carrier and the Merchant."  (Wanchoo Decl., Ex. 3).

In the analogous setting of arbitration clauses, courts have frequently found that a party can enforce an arbitration clause in a charter party via its incorporation into the party's bill of lading.  *See, e.g., Continental Ins. Co.* v. *Polish S.S. Co.*, 346 F.3d 281, 283 (2d Cir. 2003) ("Generally, to incorporate a charter party effectively, the bill of lading must specifically refer to a charter party and use unmistakable language indicating that it is incorporated." (internal quotation marks and alterations omitted)); *Son Shipping,* 199 F.2d at

14

688 (concluding that bills of lading incorporated charter party where "bills of lading specifically referred to the charter party and, in language so plain that its meaning is unmistakable, incorporated in the bills all the terms 'whatsoever' of the charter party 'except the rate and payment of freight specified therein'"); *see also State Trading Corp. of India, Ltd.* v. *Grunstad Shipping Corp. (Belgium) N.V.*, 582 F. Supp. 1523, 1524 (S.D.N.Y. 1984) ("It is well established in this Circuit that a holder of a bill of lading which specifically refers to a charter party and in unmistakable language incorporates the charter party's arbitration section can compel a party to the charter party to arbitrate a dispute which comes within the scope of the arbitration provision." (internal quotation marks omitted)); *Midland Tar Distillers, Inc.* v. *M/T Lotos*, 362 F. Supp. 1311, 1313 (S.D.N.Y. 1973) ("The bill in the instant case makes clear reference to the charter by employing the words 'subject to all the terms, liberties and conditions of the CHARTER PARTY' and it names the plaintiff, both in the 'incorporation clause' and elsewhere, thereby affording it sufficient notice of the terms incorporated."); *Lowry & Co.* v. *S.S. Le Moyne D'Iberville*, 253 F. Supp. 396, 398 (S.D.N.Y. 1966) (concluding that language in bills of lading that stated "all conditions and exceptions as per charter party" was sufficiently explicit to adopt the conditions of the charter party).[5]

---

[5]     These cases emphasize that the incorporation of the terms of a charter party into a bill of lading must be done in explicit terms. However, in these cases, it was the carrier seeking to enforce the terms of the charter party via incorporation against a third party to the charter party. In this instance, it is a third party seeking to enforce the terms of the Charter Party against a party to such agreement. Therefore, many of the concerns attendant when enforcing the terms of an agreement against a non-party are not present here.

15

Unlike those cases, the Bills of Lading here do not generally refer to the Charter Party.  However, the "Jurisdiction" clause of each refers to "*the place mutually agreed between the Carrier and Merchant.*"  (Wanchoo Decl., Ex. 3 (emphasis added)).  And in the Charter Party, the Carrier (PBHS), and the Merchant (Tung Ho), agreed to settle disputes in the Southern District of New York.  Specifically, they agreed that any claims for cargo damage would be brought in the Southern District of New York, notwithstanding any contrary provision in the Bills of Lading:

> Any ... non U.S./N.Y. forum selection clause, ... in any Bills of Lading hereunder, shall not apply to claims for cargo ... damage but such claims shall be brought in the United States District Court for the Southern District of New York ... to which jurisdiction [PBHS] hereby consent.

(*Id.*, Ex. 1).

Thus, the explicit terms of the Charter Party dictate that any claims brought on Bills of Lading issued under the Charter Party should be brought in the Southern District of New York.  Through the Charter Party, PBHS consented to jurisdiction in the Southern District of New York for claims of cargo damage, notwithstanding an agreement in a bill of lading to bring suit elsewhere.  After all, though the Bills of Lading permit some claims arising in connection with them to be brought in the flag-state of the ship, they also incorporate the "place mutually agreed between the Carrier and Merchant," which here is the Southern District of New York.

Thus, the Court finds that, even though the Bills of Lading do not contain sweeping incorporation provisions adopting all terms and conditions of

the Charter Party, the terms of these documents sufficiently evidence PBHS's intent to consent to jurisdiction in the Southern District of New York, *both* with regard to litigation that might occur between it and Tung Ho, *and* with regard to litigation that might occur between it and BST. *See Continental U.K. Ltd.* v. *Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 812-13 (S.D.N.Y. 1987) ("Ideally, the incorporation clause should specify both the date of the charter party and the place where it was signed.... However, where there is no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer vis-à-vis the shipowner, an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the charter party." (internal citations and quotation marks omitted)); *Midland Tar Distillers*, 362 F. Supp. at 1313 ("[A]n agreement [to arbitrate] need not be embodied in any single writing or document, but rather, as the Court of Appeals for this circuit has made clear, a charter party and a bill of lading may be read together to form the complete contract of carriage between the parties."). Indeed, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms consistent with the intent of the parties." *Norfolk Southern Ry. Co.* v. *Kirby*, 543 U.S. 14, 31 (2004); *see also Sompo Japan Ins. Co. of Am.* v. *Norfolk Southern Ry. Co.*, 762 F.3d 165, 179-80 (2d Cir. 2014) (applying contract principles to decipher intent of parties to bill of lading); *In re M/V Rickmers Genoa Litig.*, 643 F. Supp. 2d 553, 561 (S.D.N.Y. 2009) ("[R]ules of contract formation and interpretation shall govern whether obligations

17

imposed by bills of lading or supplemental contracts are valid and enforceable.").

Further, despite obvious factual differences, the reasoning applied in *Asoma* applies equally here. PBHS claims that *Asoma* supports its view that, because BST is a third party to the Charter Party, the Bills of Lading are the operative contracts between them. (Def. Reply 2-5). That observation is correct, as far as it goes. But the Bills of Lading incorporate the jurisdictional provisions of the Charter Party. Thus, the Charter Party — which reflects PBHS's intent to have all disputes relating to damaged cargo litigated in the Southern District of New York, no matter what the Bills of Lading say — can easily be harmonized with the Bills of Lading, which explicitly permit jurisdiction to be defined by the Charter Party.

PBHS signed a Charter Party agreeing that *any* claims for cargo damage could be brought in the Southern District of New York. It did not specify that such claims could only be brought by Tung Ho. *See Continental U.K.*, 658 F. Supp. at 814 ("[A]n arbitration clause governing 'all disputes arising out of this charter' is meant to have a much broader application than one governing disputes between 'owners and the charterers.'"); *see also Associated Metals and Minerals Corp.* v. *M/V Venture*, 554 F. Supp. 281, 283 (E.D. La. 1983) (Where the charter party "is not limited to disputes between the 'owner and charterer,' the arbitration clause is applicable to the ultimate consignee of the cargo."). Further, PBHS stated its intent to invalidate any potential non-U.S./N.Y. forum-selection clause in future bills of lading issued under the Charter Party.

18

In short, PBHS consented to jurisdiction in the Southern District of New York in the Charter Party and is now trying to avoid the enforceability of its own agreement by pointing to a purportedly inconsistent term in the Bills of Lading. This PBHS cannot do, because the Bills of Lading explicitly permit the parties to bring suit in the forum selected by PBHS and Tung Ho, and nothing in the Bills of Lading indicates an intent to override the Charter Party. *See Magi XXI, Inc.* v. *Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) ("[A] non-signatory successor in interest to a signatory of a contract is subject to the presumption of the enforceability of mandatory forum selection clauses in the contract [because] this conclusion … prevent[s] parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations." (internal quotation marks omitted)); *Aguas Lenders Recovery Grp., LLC* v. *Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (In general, "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."). To the contrary, the Bills of Lading appear designed to reinforce the jurisdictional provision of the Charter Party. Read together, the Charter Party and Bills of Lading make clear that claims for cargo damage must be brought in the Southern District of New York, where PBHS has consented to jurisdiction.

PBHS raises no other arguments regarding the Court's personal jurisdiction over it. It has made no showing that enforcement of the forum-selection clause would be unjust or unreasonable or that some invalidity such as fraud or overreaching is attached to it. *See Bremen*, 407 U.S. at 15.

Accordingly, PBHS's motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

For the reasons stated in this Opinion, PBHS's motion to dismiss for lack of personal jurisdiction is DENIED.

The Clerk of Court is directed to terminate the motion at docket entry 14.

On or before March 20, 2020, Defendants shall file a responsive pleading.

On or before March 27, 2020, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:     March 6, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

20